Okay, we'll start your time now. You may proceed, Mr. Rossman. Thank you, Your Honor, and if I could reserve two minutes for rebuttal. Whatever's left on the clock. Thank you. My name is Eric Rossman. I represent the appellants in this case. Sorry, did I say Rossman? Rossman, yes. I apologize. Rossman. That's fine. I make mistakes, too. I appreciate that. My name is Eric Rossman. I represent the appellants in this case, who are the employees or former employees of the respondents in this case, the debtor in the bankruptcy, which is Zilog Corporation. I basically present three arguments to the court today as set forth in our briefing. First, that under a de novo standard of review, I submit that this court should find that the bankruptcy court erred, as a matter of law, in finding that the Chapter 7 gender discrimination claims arose pre-discharge prior to May 13, 2002. Secondly, I submit that this court should find that the bankruptcy court— When do you think, reading the evidence as you say we should, and I think correctly say we should in the light most favorable to the plaintiffs, when do you think the discrimination claim arose? Your Honor, I think it depends on how you look at it. Again, I'm saying, reading the evidence in the light most favorable to your clients. So, I realize at summary judgment there are various inferences that could be drawn, but I'm asking you for your best case. I would submit in June of 2002, when the last male employee was retained by the company without requiring return of the retention bonus and without paying to the female employees the retention bonuses that were withheld. At that point in time, Your Honor, there was a straight line distinction. Every employee that was retained by the company, there were about 12, every male employee had received their retention bonus and had been able to stay with the company. Every female employee who had been retained by the company had not received their retention bonus. What was unique about the June—that's the Sean Beck claim, as I recall. What was unique about that as compared to the prior allegations of males being treated differently? What happened in June that triggered this notice that maybe you should file a claim? That's a very good point, Your Honor. There were other employees that had been retained in, as the record shows, either late April or early May to my client's best guesses. We weren't able to take discovery to find out the exact retention dates of those individuals. But the last point, when Sean Beck was hired in June of 2002, that was the last employee of this pool of employees that were retained by the company. And when that last employee was retained by the company and not required to return his retention bonus, now you have this framework of discrimination. You have, for example, 10 employees or 12 employees that were retained by the company. Every one of the males in this pool of retained employees received their retention bonus and were allowed to stay with the company. Every one of these females was not able to retain— But what was it about that last one? I mean, you've said that there were prior male employees that were treated differently. Then in June, there's Sean Beck. But what was different about his situation as opposed to the prior nine male employees? I don't think it's different, Your Honor. I think it's part of a continuing act. And I think if you look at the O'Loughlin v. Orange County case, it's pretty similar. Let me ask the same question in slightly different words. Why did you need—if you said there were 12 employees, okay, and Beck was the only one in June, so that means you've got 11 out of 12. Why did you need the 12th one in order to say the claim was established? I mean, surely 11 out of 12 is enough. I don't know if 11 of the 12 is enough, but there was at least one additional person that the decision had not been made as to whether or not to retain or require repayment of the retention bonus. Well, I think that's a pretty weak position to say that you needed all 12. So let's say we don't buy that position. What date do you then fall back on? The date that I would fall back on is unclear in the record, Your Honor, and I would submit to the Court that there are clear issues, factual issues, genuine issues of material fact that should have been addressed through an evidentiary proceeding rather than on summary judgment. My clients offered affidavits based on their best recollection of when they first learned about the first one of these employees being retained and not required to repay his retention bonus. And their best recollection in their affidavit was in late April or early May. Now, that is a fairly ambiguous statement. We were not afforded the opportunity to actually take discovery and find out the actual retention dates or rehired dates of these particular individuals. But I submit to the Court that— Well, it doesn't really matter when they were actually retained and rehired. There could have been a secret agreement going back to December 2001. For all we know, let's rehire and pay bonuses to all the guys and let's rehire and take away the bonuses from all the women, right? So there could have been a secret agreement like that that was trotted out over time or made public over time. The real question is not when the rehiring was done. The real question is when your clients found out about it. At what point should they have fairly contemplated that what they've got, that they are being treated in a discriminatory fashion? I submit to Your Honor, if you look at the affidavits of my clients, they were told that no retained employees would be able to receive the retention bonus. They did retain some of these male employees, but their understanding, as represented by Zilog to them, was that these male employees were retained for special projects. They were not retained permanently after June 27th of 2002. And it wasn't until, according to their affidavits, late April or early May, that they discovered that these employees were, in fact, going to be permanently retained. It was at that point that the prior representations became false. It was at that point that it caused them to take further steps to find out the total circumstances surrounding this particular conduct. So the discovery, according to your best case, then, putting aside the June situation, is that it's late April or early May that they have enough information to fairly contemplate a discrimination. But the plan was confirmed on May 13th. So wouldn't anything that they learned in late April be an administrative claim? If they learned it, in fact, in late April or any time within the first 13 days of May, wouldn't that then have been an administrative claim? I guess I would submit, Your Honor, that we can't assume anything on summary judgment. I asked a question. Yes. If you answer with but. If, in fact. Why don't you start with yes or no? Yes, April. If they discovered in April, they would. Or any time in the first 13 days of May. Any time in the first 13 days of May, yes, Your Honor. So what's left of late April and early May? Your Honor, I would submit that May 14th is just as likely as April 20th in that vague recollection. And I would submit to the Court that once discovery is taken, if we're allowed to submit requests to Zilog to actually identify when these individuals were retained, it very well could be after May 13th. They were doing the best they could in providing their estimates of their recollection at the time. Let me ask you to talk about the contempt thing, if you would, please. Do I understand correctly that you're not quarreling with the amount, but just whether there was contempt at all? Is that correct? I'm quarreling with the issue of whether or not there was contempt, Your Honor. Okay. And the amount. I didn't see anything in the blue brief about your quibbling over the $20,000, but. Well, I think we argued in there that the award of attorney fees would be, was inappropriate. At all? At any amount? Yes. Okay. Do I understand correctly that it's your position that you folks didn't know about the discharge injunction? My clients did not know about the discharge injunction when the complaint was filed. Okay. And then at some point they're told there's a discharge injunction? Yes. And if I understand how a discharge injunction works, you're not supposed to commence or continue an action? Yes. So shouldn't they have discontinued the action, dismissed the case when they found out about it? I would submit to you, Your Honor, that by stipulation with opposing counsel, the first time we were informed of the discharge injunction, we reached a stipulation with opposing counsel to stay all proceedings in the state court action and to proceed forward before the bankruptcy court to adjudicate the issue as to whether or not these issues arose during the bankruptcy or were precluded by the discharge injunction. Where is the stipulation? Was that brought to the attention of the bankruptcy judge? It absolutely was, Your Honor. Do you recall where that is in the record? It was in my affidavit, and I know opposing counsel will not dispute that in any way. Okay. And we did, in fact, stay. The debtor was not required to answer the complaint. The debtor was not required to do anything in response to that complaint once we found out there was a discharge injunction in place. I'm going to make sure I understand your argument. Your contention is that you had an agreement with opposing counsel that a stay would suffice, and they then went back to the bankruptcy judge and said, you're in contempt for not dismissing the case altogether, and we want fees well in excess of $20,000? Your Honor, I don't know if I can say that. They certainly didn't stipulate. They wanted us to dismiss the complaint. And what I represented to opposing counsel. What stipulation are you referring to? It was a stipulation between myself and opposing counsel. Who specifically? Myself and Kurt Ramlow. Well, maybe it was Mr. Levin. I can't recall. And is that stipulation in writing? It was a stipulation. No, it was an oral stipulation. But we did follow immediately with proceeding through the bankruptcy court for an adjudication of these issues. The reason I was reluctant, Your Honor, to dismiss the complaint. I know why you're reluctant to do it, but I want to get back to you. Your contention is that you had an agreement that you could simply stay the action and not dismiss it, and yet they went ahead and told the bankruptcy judge, I want to find these people in contempt because they didn't dismiss the case. I'm not saying that, Your Honor. Opposing counsel wanted us to dismiss the complaint. What I said to opposing counsel is the Idaho statute of limitations is six months on this claim. My preference is to stay. Any actions on the state court complaint, let's adjudicate this in the bankruptcy. And, in fact, if the court believes that these are pre-discharge claims, that these are administrative claims or otherwise, we will immediately dismiss the complaint, which is what we did. That's what you wanted to do. What did they agree to? They stipulated that we would proceed forward in the adversary proceeding. Now, I can't represent that they stipulated that we could proceed forward without dismissing the complaint, that they would waive any argument that that was a violation of the discharge injunction. But I think if you look at the Dyer case, it absolutely is not a violation of the discharge injunction. The Dyer case says that it's not a violation if you didn't know about it. That's right. Okay, but then they told you about it and you kept the case on the books anyway. Your Honor, the case was kept on the books with the understanding and stipulation that should the bankruptcy court determine that, in fact, these are pre-discharge claims because there was a genuine issue as to whether or not they were pre-discharge. There still is. If the court, in fact, decided, the bankruptcy court decided they were pre-discharge, we would dismiss that complaint immediately. They did not have to answer. They did not have to do anything. After we became aware of the discharge injunction, we did nothing further to perpetuate that issue other than stay the state court action and go before the bankruptcy court. And with that, the Dyer case is – Your Honor, I notice my time is up. Why don't you finish your answer and then conclude. The Dyer case is completely distinguishable from a factual standpoint in this case as well. That was a lien that was filed and the creditor did absolutely nothing to remedy the discharge – or to remedy the violation of the injunction. He just left the lien there and he ignored it and he refused to do anything further. He didn't go before the bankruptcy court to have the matter adjudicated promptly. Instead, he just ignored it and left the lien. You didn't go before the bankruptcy court either. They hauled you there just as well as the creditor in Dyer was hauled before the bankruptcy court. I will say that was part of the stipulation, Your Honor. What was stipulated, too, was opposing counsel said, we're going to file an adversary proceeding to address these issues, and we stipulated to a scheduled – I have some difficulty about the stipulation. I sense that it may be some of the same difficulty that Suleiman has. You know, stipulation suggests a mutuality of agreements. You know, I agree to something, you agree to something, and we sort of – and it's sort of hard to know what this thing is. It was not in writing. This was something that you did – you had a telephone conversation with opposing counsel? Yes. And you didn't reduce it to writing. You didn't send a follow-up email or fax or regular mail saying, here's what we agreed to over the phone? The stipulation was simply this. Mr. Levin – Why don't you try yes or no? Yes. Okay. And you don't have anything in the record that, as far as I can tell, and correct me if I'm wrong, but you don't have anything in the record that under oath says, look, this is my recollection of what we agreed to? I believe the affidavit – Or is it not? I disagree, no. Okay. There is something in the record? Yes. So you have a sworn declaration in the record describing this conversation with opposing counsel? Your Honor, yes. There was an affidavit put before the bankruptcy court. Unfortunately, I don't have it right in front of me, but there was an affidavit put before the bankruptcy court that identified that by stipulation we agreed to stay the state court action until the matter could be adjudicated. And I swore to that under oath. So there is such a document? Yes. And you don't have it because it's not an excerpt from record, or you don't have it because you can't find it while you're standing there, or you don't have it because it's somewhere in the record but you don't know where it is? It would be in the excerpts of record, Your Honor. Actually, it would be identified in the index of the matters before the court. Which you have in your hand? This is the full excerpts of record of documents that we put before this court. It was in the record that was below at the bankruptcy court that would have come up before this court. You're not doing a good job of explaining. Is this document somewhere in this courtroom? I'd have to look in the other excerpts of record of the index of findings. Okay. Why don't you do that when you sit down? We'll probably give you a little time for rebuttal. And why don't you see if you can try to? And I would say, Your Honor, that I did not anticipate that to be an issue. An opposing counsel, I submit, would stand before you today and agree that that was a stipulation. I guess you didn't prepare well for this argument. I don't think you should. On a key fact like that, it's really astonishing that you don't have the document on which you rely and that sets forth the terms of your understanding, which, you know, winds up, may in fact be key on the question of contempt, that you don't have that present in the courtroom and don't know where it is. So your lack of anticipation just shows that you didn't prepare well. Well, it's cited within the briefing. Can I ask a question? Of course. You filed this declaration with the bankruptcy court stating that there was a stipulation. Yes. Right. That's what you're telling us. Yes. Was there a response to that declaration filed by opposing counsel? In other words, did they say to the bankruptcy court, no, we didn't have such a stipulation or that's not what our stipulation was, anything of that sort? No, they never disputed that there was a stipulation. The only thing they said was, yes, there was a stipulation that they would stay the state court action, but we wanted them to dismiss the complaint. And my point was, and Judge Morgan, if you read her initial hearing on the matter that we had before her, she understood that. Because if, in fact, we had dismissed that complaint, gone through the bankruptcy court and had the bankruptcy court agreed with us that those were post-discharge claims, we would not have been able to pursue them. Our statute would have expired. Our statute of limitations would have expired. But you couldn't dismiss your contract and tort claims without any jeopardy like that. No. But in Idaho, any claims for wages which bonuses are deemed wages are preempted by the Idaho Wage Claim Act. And the Idaho Wage Claim Act would take precedence over any breach of contract type claim for nonpayment of the retention bonus. And the Wage Claim Act has a six-month statute of limitations in it. And because of that, and even under the bankruptcy rules, if, in fact, the court had agreed with us, which we believe they should have and we believe this court should agree with us, that those claims were outside of the bankruptcy, then, in fact, we would have lost those causes of action. We would not have had a remedy. And that's the only reason we approached it through a stay procedure rather than immediately dismissing it. If it was something that had a five-year statute. That was a long answer, and I want to make sure I understand it. What you're saying is that if you had that all of the claims having to do with a breach of contract or a tort, all the non-discrimination claims, all the claims based on the fact that they were promised a bonus when paid the bonus in effect at a six-month time fuse? Yes. I would submit that the Idaho Wage Claim Act has preemptive force on any claims for wages in the State of Idaho, and that would be a claim for wages, a claim for retention bonus. And that has a six-month statute of limitations. It has a one-year statute of limitations if, in fact, it is not a claim for a – it's a very fine-lined distinction between the six-month and the one-year statute in Idaho, and there isn't good case authority to find where that line is. What about the Human Rights Commission proceeding that you filed a – was it a reply or a reply memorandum? We filed a petition, and they actually filed documents before the Idaho Human Rights Commission and the EEOC. But I would point out to the Court that the bankruptcy courts have long held that just filing administrative – is not a violation of a discharge injunction. In re pin com, which we cited in the brief, specifically said that. And it makes a lot of sense. I mean, if the debtor is continuing to discriminate against somebody, then that particular individual shouldn't be precluded or shouldn't be discouraged from going before a regulatory agency and reporting the violation. What's the – is the Human Rights Commission much like the EEOC? It's exactly the same. It deals with the Idaho equivalent of the EEOC, and it also administers the EEOC by delegation from the – So it's a step on the way towards bringing a discrimination claim in court. It can be, or it can be just a complaint to the Human Rights Commission that says, hey, we believe we were discriminated against. And then the Human Rights Commission can do one of two things. Either it can – well, it will first investigate it, and if, in fact, it believes that there is a discrimination involved, it can bring its own proceedings, which would be something outside for my clients. My client certainly, after the investigation is completed and the IHRC closes its file, my client is free under the laws to file a discrimination complaint, but they are not taking any action toward collecting damages for the discrimination until that point occurs. Thank you. Thank you, Your Honors. Okay, we'll hear from opposing counsel. May it please the Court, Kurt Ramwell, Skadden, Arps, Slate, Mar and Flom on behalf of the appellee, Zylug, Inc. The decision to affirm or reverse a bankruptcy court today turns on an abusive discretion standard, Your Honors, and there was no abusive discretion here. I'm sorry. Summary judgment is reviewed for abusive discretion? Isn't summary judgment reviewed de novo? Yes, Your Honor. With respect to the contempt finding, to a certain extent, there are de novo issues there. But with respect to the late claims, both pre-petition claims and discrimination claims, it's subject to an abusive discretion as well as when those claims arose. On the question of when the claims arose, that's a factual issue that's reviewed by a summary judgment standard. It's not abusive discretion. If, in fact, the claim arose in June of 2002, then it becomes a post-bankruptcy claim. It's not an administrative claim. It's not a pre-petition claim. And they're free to proceed with it, right? Yes, Your Honor, but there were two instances in which when the claim arose was an issue before the court. I'm sorry? There were two instances in which when the claims arose was before the court. But the question of when the claim arose is a factual question, and that is reviewed by the summary judgment standard, not by an abusive discretion standard. When it was adjudicated as part of the summary judgment motion, yes, Your Honor. When it was adjudicated as part of the claimant's request for relief from the bar dates, they submitted all of the evidence they had. They did not request any additional discovery, and no request is reflected in the record. And they submitted a request for excusable neglect that was based in part on the assertion that the claim was either post-discharge or post-petition and pre-confirmation. When the summary judgment motion was heard, the only issue there was whether the claims were pre-discharge or post-discharge. When the excusable neglect issues were before the court, there were two issues. Was it pre-petition or post-petition, and was it pre-discharge and post-discharge? The claimants came in. They presented all of their evidence as part of a motion for permission to file late claims. The court ruled on that, and that ruling, whether there was excusable neglect and because it was part of the excusable neglect analysis when the claims arose, was subject to an abuse of discretion standard, Your Honor. What, if anything, did you stipulate to with regard to the State case? Your Honor, I was not part of those proceedings itself. My understanding is that the stipulation was reduced to a writing and was approved by the bankruptcy court. The stipulation, however, reserved all of Zilog's rights. Zilog accepted that which was offered by the claimants in terms of slowing down the proceedings in Idaho, but Zilog continued to insist that the proceedings be dismissed. They accepted the relief offered, put it in a stipulation, but in the stipulation expressly reserved all rights, including continuing to insist that the proceedings be dismissed. That seems like an inconsistent stipulation. I don't understand it. You stipulate that you can just stay the proceedings, but you are going to object that you don't dismiss the proceedings. That's correct, Your Honor. I don't get that. The stipulation resolved a motion that had been filed and a request for an order shortening time on a motion for temporary restraining order. And that stipulation obviated the need for the court to adjudicate the motion for adversary proceedings. What was the relief sought under the TRO? I believe it was for a declaration. And, again, I wasn't involved in those proceedings, Your Honor, and it is not part of the record. Telling us you're not involved is not really helpful. If you're here representing your client, you're supposed to know the record, okay? We often have counsel up here who have nothing to do with a case below. It's very common in criminal cases. And you are supposed to know the record. And if it's in the record, then you can have an answer for us. And whether you were physically present or not makes no difference whatsoever. If it's not in the record, then it's not in the record. It doesn't matter whether you were physically present or participated in it. It's not in the record. And the answer is it's not in the record. So, repeatedly telling us I wasn't there just, you know, is really poor form and unhelpful to your client or to the court. Your Honor, my understanding of the question is, what is the answer to the question you were asked? What is the relief sought or that was sought in the TRO? A declaration that the defendants filing the state court action violated the discharge injunction. A temporary restraining order prohibiting the defendants from going forward with the Idaho state court action. And I believe that that was all that was requested at the TRO. And so they agreed, we're not going to do anything else. We're not going to prosecute the case. We're going to put the case on hold. And essentially you got what you were asking for. As to the TRO, yes, Your Honor, as to the preliminary injunction requiring them to What was the point? I don't understand what the point was in requiring them to dismiss the case before the bankruptcy court had a chance to adjudicate their claims. And what is the huge harm suffered by your clients or by the dignity of the court? Because instead of going out and immediately dismissing the claim, they choose to say, okay, we'll put it on hold. And we'll go to the bankruptcy court and adjudicate the situation. And if the bankruptcy court says we have to dismiss, we'll go ahead and dismiss. I just have difficulty understanding why that is a matter of contempt, why that is a matter that, you know, affronts the dignity of the court, you know, somehow undermines its processes to amount to contempt. It really seems to me more like petty squabbling among lawyers. Your Honor, it's the creditor's duty to determine whether they're complying with the discharge injunction and if they need an exception to go to the bankruptcy court. DIA says they are not aware, that if they're not aware of it, they can't be held in contempt. They tell us, and you have not challenged, that they were not aware of the discharge injunction. Okay. We do challenge that assertion, Your Honor. Well, there's certainly not a finding on the record that they didn't know. So you can't base a contempt finding on a finding that they knew about the discharge injunction. There's no finding like that on the record. So then you have to go to the next level and to say, well, when we called them up and we told them this thing existed, they had to drop everything and dismiss their case. And by failing to dismiss their case right then and then, they were acting in contempt of the federal court. And I guess what I don't understand and what I would like you to explain to me is why is it a contempt of federal authority for a party to say, well, I didn't know about this, but I am going to immediately stop doing anything in state court. I'm going to impose no further costs on opposing counsel, and I'm going to come with you to federal court, and let's ask the federal judge whether what we're doing is wrong. We take the position that it's okay, but if the federal judge tells us it's not, we're going to dismiss it immediately. Now, why isn't that highly respectful of the federal court and fully complies with any interest that the debtor has? Why is this a matter of contempt? I'm a little astonished by this. Your Honor, I believe the claimants did have knowledge of the discharge injunction. I'm sorry? I believe the claimants did have knowledge of the discharge injunction. They received and admitted receiving the notice of commencement in case, which advised the parties to do so. There's no finding to that. You can answer. That's not the question I asked. There's no finding that they knew. And the bankruptcy court did not base its finding contempt on a finding they did, in fact, know. I believe it is based on this failure to dismiss. So I'd like you to address your comments to the failure to dismiss, which is what I asked about. Yes, Your Honor. I believe there is a finding. Again, it was the creditor's duty to dismiss. Why? Once. Why? That is how the code is set up. Why dismiss? Why go to the trouble and risk of dismissing a state claim when you can just say, look, I'm going to put it on ice, nothing else is going to happen, we're going to go to the federal court and ask the judge whether this is okay. I just don't understand it. The refusal to dismiss, Your Honor, is in the context of claimants who refuse to do anything, who put the onus on this debtor to prepare and file papers with the bankruptcy court to restrain it, who put the duty and the onus on the debtors to prepare papers to show to the court that there was a violation of the discharge injunction. I'm sorry. You had a dispute on the question of whether or not this was content, and there was no way to resolve the dispute except by going to federal court, by going to the bankruptcy court. You obviously couldn't agree on that point. So one way or the other, whether you are the ones who went in first and asked for the TRO or whether they went in first and asked for a declaration, it doesn't matter. You have to go to federal court and spend the money to resolve this dispute. So I don't understand how it is you were prejudiced by the fact that you were the ones who went into federal court first. Your Honor, the cost of the debtors having to investigate the situation, prepare the affidavits, to do all of that work, to figure out what the situation is, and to put that burden on the estate is not how the code is designed. There's an injunction that says the claimant's… Would you have spent less money if they had said, okay, we're going to put the estate case on hold, and now we are going to go into bankruptcy court, and we are going to ask for a declaration that the proceeding with the estate case is okay. Would you guys have had less of an expense if that had been done that way? Yes, Your Honor. Why is that? The debtors would be doing the initial investigation. Excuse me. The claimants would be doing the initial investigation. They would be doing the initial briefing to the court. They would be taking the laboring ore on all of that, and they would be going to the court, the bankruptcy court, to present all of that evidence, present their research, to present the briefs they prepared, to do all the work they were required to do. At that point, the debtors might have the ability to say, I agree with that. Your debt is accepted from the discharge. I don't agree with it. I'm surprised you managed to say that without laughing. You think that I would just hold over and say, oh, yeah, you know, you're so persuasive. You've presented this. But, you know, they essentially presented all of this when they opposed your TRO. They presented all their evidence. I didn't see you say, oh, well, I'm so persuaded. Never mind. No, Your Honor. They didn't file papers until after Zilog had prepared a complaint, motion for TRO, motion for preliminary injunction, a stipulation, and then a motion for summary judgment, including all of the investigation and factual affidavits that are required for that. Only then, in response to those papers, did the claimants file any papers in the bankruptcy court. Can I ask you a question? Is there not Ninth Circuit law that says that agreeing to a stay or issuing a stay can be sufficient to remedy an automatic stay violation? I would assume, Your Honor, that with respect to automatic stay violation, to agreeing to a certain level of relief from stay is appropriate. But the analog here would be an agreement agreeing to certain relief from stay, but the parties reserving all of their rights as to prior violations of the automatic stay, as well as perhaps those areas that are not subject to agreement and the creditor saying I'm going to go forward outside the court in the future on these particular items we don't agree on. And I don't believe that agreeing to a stay as to the agreed portion lets the claimants off to the hook for the non-agreed portion of the stipulation or the acts that are outside the stipulation. And those acts, in your position or in your opinion, are that they filed the case in state court and they filed the claim with the EEOC or the Human Rights Division. Is that basically the position? That's right, Your Honor. And they did have the right to file the claim with the EEOC, but it should have been made very clear that they were not requesting any monetary relief but merely were asking the EEOC to investigate and to do whatever it could do as permitted by the bankruptcy code. How would they do that? How would they do that? Simply advise the court that this matter has been discharged or is subject to dispute as to discharge and that we hereby file this complaint, but we do not do so with the intent to recover any kind of monetary relief. But both the initial charges and the ---- I'm sorry. They were supposed to put that in their charge to the EEOC? I believe that that would have been ---- Say it again with a straight face. I can't. Why do they have to say anything at all about what their intentions are? If they don't, Your Honor ---- If they're entitled, as you say, to go to the EEOC or the Human Rights Commission, why do they have to disown? I mean, where does this come ---- Oh, by the way, we're not going to pursue ---- Why do they have to say at all? If they have a statutory right to complain to an administrative agency about ongoing discrimination, where does this come from that they have to make it very clear, disown any interest in getting money? The act of filing charges can lead to various avenues of activity afterwards. Well, yes. Yes, so what? It can be the prelude to filing monetary ---- What? They wanted to file a police report. Would they have to tell the 911 operator we're not looking for monetary damages? I'm not ---- No, Your Honor, I don't believe that's a prerequisite to filing a monetary complaint. But this particular action is a prerequisite to filing, my understanding, a monetary complaint with respect to discrimination. And, you know, you're just losing credibility there. You really are. I mean, this idea that they have the statutory right to pursue, but they have to sort of put in a disclaimer. It's also a prerequisite to administrative action, isn't it? Yes, Your Honor. Not necessarily monetary action. And with respect to administrative action and any action by the EEOC. Any authority for the disclaimer arguments you're making? Any authority at all anywhere? The Pincomb case, Your Honor, relied heavily on the fact that the claimant there in its EEOC proceedings made it very clear that she was not pursuing any monetary relief. And it was that those facts were among the facts that the Court considered in determining that that particular debtor did not violate the discharger junction or the automatic stay. I think that's a long way of saying no. There's a case that had those facts, but there's no case that says that's what you have to do. That you have to, in exercising the rights you have under law, you have to say, oh, by the way, I'm not also going to use this to get money damages. That's correct, Your Honor. And there's no case that goes the other way as well, Your Honor. Because nobody has thought of that as a possibility to refute. But let's get back to summary judgment. At some point, the question of whether or not they have a claim and when the claim arose winds up being a question that's resolved in summary judgment. And if it turns out that they did not, the claim did not arise before the May 13th, then it's not in bankruptcy at all. That's correct, Your Honor. I'm talking about the discrimination claim. Yes, Your Honor. Okay. How do you deal with the fact that the dispute has facts on this and that the district court and the bankruptcy court applied the wrong standard? The district court applied a clear error standard as it was for a trial. And the bankruptcy court resolved dispute issues of fact. Certainly, as to the third plaintiff, that's absolutely clear. She says she didn't even know. This is the supervisor. She says she didn't even know about this until June, until the two other women came to her and said, by the way, do you know all the guys are getting bonuses and why not? The bankruptcy court had to resolve dispute of facts when considering the excusable neglect analysis. On the motion for summary judgment, however, the court accepted, I believe, all of the facts in the claimant's declarations. Couldn't have accepted her claim that she had no idea. This is what is her name? Cleverdon. Thank you. Cleverdon, that she did not know a thing about this until June after the confirmation of the plan, about a month later, when the other two women who worked for her came and said, by the way, you know, here's what we've discovered, and that's the first she learned. Yes, Your Honor. How can you resolve a claim like that? And if that is the case, her claim does not accrue until past the confirmation date. Your Honor, what she learned in June is just the end of a lot of information that she obtained. Yet, even if that's the first time in which she became fully aware, the fact remains that within a week, she had a state court action on file before the July 1 administrative claims. So what? You know, you keep saying that in your brief, and I am just baffled what that means. Let's say she could have, but she could have filed something. There was no administrative claim. When does the period for the administrative claim end? When did it end? When was the last time the claim could accrue and still be treated as an administrative claim? Now tell me that. May 13th, Your Honor. Okay, so anything that accrued past May 13th is not an administrative claim, is it? That's correct, Your Honor. Okay, so if it's not an administrative claim, you can't file it in the bankruptcy court by July 1st. Isn't that right? That's right, Your Honor. The fact that she had time to file something by July 1st makes no difference at all. You keep putting this in your brief, and you argue it standing here with a straight face, but it makes no difference. Your Honor, there's no — What difference does it make that she could have filed something in the bankruptcy court by July 1st? The policy of fair contemplation of claims is for — Now, let's say she learned nothing. She knew nothing at all until June 13th, until middle of June. Okay, are you with me? Yes, Your Honor. And that's what her claim is, and that's what she says, okay? And that's what we have to believe of summary judgment purposes, okay? Are we together on this? Yes, Your Honor. Okay, June 13th or thereabouts, June 15th, she finds out for the first time ever that this claim exists, okay? Now, where can she — what can she do? And she says, I want to file a claim with the bankruptcy court to get my money. What kind of claim can she file with the bankruptcy court for something that she first learned about on June 13th? I believe she could have filed her state court complaint with the bankruptcy court, Your Honor. As what? As a request for payment of an administrative expense. But administrative expenses, you have told me, ended May 13th. Anything that accrued after May 13th, you have just stood there and said, is not an administrative expense. That's right, but her claim did not accrue after May 13th, Your Honor. You know, we're going around in circles. She is claiming that she did not know about this, had no idea, until June 13th. So a claim couldn't have accrued before June 13th, the middle of June, if she had no idea about it. Are we agreed on that? Let's say all this stuff was happening and she has no idea, never heard about it, didn't know about the bonuses. First she learns about it is the middle of June. When does a claim accrue? When does a claim accrue? It accrued before May 13th, Your Honor, because she had an opportunity to participate in the bankruptcy case. No. If she doesn't know about it and has no information on it, how can her claim accrue before she knows anything about it? In the Jensen case, you had a discharge of toxic waste sometime far back. And as soon as that occurred, theoretically, someone could file a claim on that. But the State of California didn't learn about it until just before bankruptcy and had time to file a proof of claim during the Chapter 7 case. So this Court found that that claim arose in time to be part of the bankruptcy estate here. And the key there was, could the State of California have filed a proof of claim? Could they participate in the case? That's where the question of when a claim arises often deals with — This is a situation where she does not find out about the claim until the middle of June, after the discharge period has ended, after the claim has been confirmed. This is what she says in her affidavit. This is what's in the record. So she knows nothing. Maybe you can disprove it at trial, but she knows nothing until June 13th. How can she raise an administrative claim on something like that? Your Honor, you've asked me to assume that she just learned new knowledge as of June, and we dispute that that is, in fact, the case. I understand you dispute that. She filed an affidavit with the EEOC. I understand you dispute that, but do you understand about answering hypothetical questions? Yes, Your Honor. And you understand that when you are arguing before a court, sometimes you'll be asked hypothetical questions. You'll be asked to assume things that you disagree with. You might even be asked to assume things that are contrary to fact in order to focus on a particular legal point. You understand that aspect of oral advocacy? Yes, Your Honor. So the fact that you personally disagree with the date I've chosen to ask you about is interesting, but not particularly relevant, is it? No, Your Honor, but I wasn't sure if you had changed the tenor of your question. My apologies. I've asked you again, and I've asked you several times already. Assume she only learned about this on June 13th, as she seems to claim in her affidavit. Now, I understand you doubt that, and I understand that you dispute it, and I also understand that you think that's not the date I should be concerned with. We'll accept all of those things, but accept that I, in fact, am asking you about that. So this woman does not know a thing about this claim, has no information about it until that date. Okay? Yes, Your Honor. What kind of claim can she raise in the bankruptcy for something that she only learned about in the middle of June? For bankruptcy purposes, Your Honor, that person still has a claim that arose pre-confirmation if she has time to participate in the bankruptcy case. I'm sorry. I don't understand how. How is that? If she doesn't learn about the claim until then, how can that be in fair contemplation? How can this be a claim that's fairly contemplated before the cutoff date? Because in mid-June, on your hypothetical, she now knows all the facts she knows to know that she has a claim, and she still has time to file that claim with the bankruptcy court. It arose for most purposes. I guess that's the part of your answer that just completely baffles me. I have no understanding. If the administrative claims period ends May 13th with a discharge and with adoption of the plan, how could something that accrues afterwards still be filed in a bankruptcy proceeding? This is what I've been trying to get at, and this is what I don't understand. Your Honor, I don't believe that acts that occurred pre-petition and that a claimant learns about post-discharge is determinative of whether that claim arose post-discharge. If the acts occurred pre-petition — I'm sorry. I thought that the question was, was it in fair contemplation at the time before discharge? Was it a fair contemplation of the claim? How can you have a fair contemplation of a claim that you don't know anything about? Isn't fair contemplation the standard that you both agreed on? Yes, Your Honor. Okay. How can you have fair contemplation of a claim that you know nothing about? The date on which you acquire knowledge that puts you on fair contemplation, there's nothing in the case law that says that that itself is the date that the claim arose, Your Honor. This fair contemplation test is an exception where the Court is balancing the needs for including all claims, no matter how remote and contingent, in the bankruptcy case, but recognizing that certain claims should not be because the claimants did not know about it in time to participate in the bankruptcy proceedings. This claimant, when they learn about it in mid-June, they still have time to participate. If this claimant learns about it in mid-July, they do not have time to participate in the distribution from the estate. That's a different question. But in mid-June, this person has the ability to file a claim and did file a claim with the State court within 10 to 15 days. You know, that's certainly the position you're taking in a brief. I don't understand it in the least, but okay. And your best case on that is Jensen. That you can have a fair contemplation of a claim even after the period expires, so long as the filing date is in the future. Your Honor, I understand what you're saying. I'll take a look at Jensen. There are other cases cited in the brief, Your Honor, where we discuss those courts that have used certain dates for when to determine fair contemplation. And with that, I thank you, Your Honors. Thank you. Did you wish to take a minute for a bottle? I would, Your Honor, and I appreciate that. First of all, on the In re Jensen and the fair contemplation, I think opposing counsel is completely misreading that case. It did not indicate that if a claimant discovers that he has a cause of action or reasonably should have discovered that he has a cause of action after the date of discharge, that he fairly contemplated that he had a cause of action before the date of discharge. It just can't possibly mean that, and it certainly didn't say that. And it's completely inconsistent with the O'Loughlin v. Orange County case, which was a discrimination case where acts occurred both pre-discharge and post-discharge. And the court said that the acts of discrimination are a continuing act. And therefore, as a continuing act, the cause of action is outside the discharge, outside the bankruptcy, and they can bring the claim for all of the acts that occurred after the date of discharge. I did not have an opportunity to talk about the excusable neglect issue. The only points I would make there, Your Honors, is that the court misapplied the law. That's reviewed de novo. She decided on a summary judgment proceeding with disputed facts. She did not apply any of the pioneer four-factor tests. She did not apply any of those particular points. And then she went further and established a per se rule of when excusable ñ The bankruptcy was in the Northern District of California? Yes, Your Honor. Who was the bankruptcy judge? Judge Morgan. Judge Morgan. And the planned closing was in Niagara? No. Yes, Your Honor. Okay. Thank you. Thank you, Your Honor. The case is argued. We'll stand some minutes.
judges: Kozinski, Silverman, Benitez